UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
CARLOS MARIN, et al., *on behalf of themselves*
*and all others similarly situated,*

                   Plaintiffs,

    - against -

APPLE-METRO, INC., et al.,

                   Defendants.
--------------------------------------------------------------X
SHAUNTA DOVE, *on behalf of herself and all*
*others similarly situated,*

                   Plaintiff,

    - against -

APPLE-METRO, INC., et al.,

                   Defendants.
--------------------------------------------------------------X

**ORDER**

12 CV 5274 (ENV)

On October 22, 2012, Carlos Marin, Kenny Lebron, and Martina Hanisch (the "Marin

plaintiffs"), on behalf of themselves and all others similarly situated, filed a Complaint against

Apple-Metro, Inc., a corporation consisting of Applebee's Restaurants located in Manhattan, the

Bronx, Brooklyn, Queens, Staten Island, Westchester and Rockland Counties ("Apple Metro").

(Docket No. 12 CV 5274). The Complaint also names as defendants the individual restaurant

branches,[1] as well as several individual defendants: Zane Tankel, Roy Raeburn, Kirk Samlal,

---

[1]117th Apple, LLC, 42nd Apple, LLC, AM NYCF, LLC, AT Apple, LLC, Airmont
Apple, LLC, Astoria Apple, LLC, BTM Apple, LLC, Bay Plaza Apple, LLC, Bay Terrace Apple,
LLC, Bed-Stuy Apple, LLC, Broadway Apple, LLC, Cortlandt Apple, LLC, Cross Country
Apple, LLC, Crossroads Apple, LLC, EB Apple, LLC, Expressway Apple, LLC, Flatbush Apple,
LLC, Fordham Apple, LLC, Fresh Meadows Apple, LLC, Harlem Apple, LLC, Hawthorne
Apple, LLC, Jamaica Apple, LLC, Kisco Apple, LLC, Mamaroneck Apple, LLC, New Dorp
Apple, LLC, New Rochelle Apple, LLC, Outerbridge Apple, LLC, Derrick Palmer, Port Chester
Apple, LLC, Queens Center Apple, LLC, Rego Park Apple, LLC, Riverdale Apple, LLC, S.I.

Aubrey Daly, Roland Raymond, Derrick Palmer, Susy Quintero, and Chris Antoine (the "individual defendants") (collectively, "defendants"). (Docket No. 12 CV 5274). On June 28, 2013, the Marin plaintiffs filed an amended Complaint, in which they alleged that defendants had violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and New York Labor Law §§ 195, 215, and 650 et seq. ("NYLL"), by altering the employees' electronic time records, and failing to pay the non-managerial employees the proper minimum and overtime wages. (Marin Compl.[2] ¶¶ 1, 2).

On March 18, 2013, Shaunta Dove ("Dove plaintiff"), on behalf of herself and all others similarly situated, filed a Complaint in a related action against defendants. (Docket No. 13 CV 1417). On September 24, 2013, Dove filed an amended Complaint, in which she alleged that defendants failed to pay "tipped" hourly workers minimum and overtime wages by reducing their tip credit, in violation of the FLSA and the NYLL. (Dove Compl.[3] ¶¶ 1-3).

Currently before this Court is plaintiffs' motion for conditional certification pursuant to Section 216(b) of the FLSA, approval of the proposed FLSA Notice to be sent to all potential opt-ins, an order to post notice in defendants' restaurants, and discovery of the names and contact information for the potential opt-ins. Although the cases have not been formally consolidated, the parties have stipulated that the cases are related, and plaintiffs filed one motion for

---

Apple, LLC, SVC Apple, LLC, Sheepshead Apple, LLC, Triangle Apple, LLC, and White Plains Apple, LLC.

[2]Citations to "Marin Compl." refer to the Marin plaintiffs' second amended Complaint, filed June 28, 2013.

[3]Citations to "Dove Compl." refer to the Dove plaintiff's first amended Complaint, filed September 24, 2013.

conditional certification, although defendants responded with two separate responses. (Pls.' Reply[4] at 1, n.2). Plaintiffs filed their motion on February 3, 2014, and on February 5, 2014, the Honorable Eric N. Vitaliano referred the motion to the undersigned.

## FACTUAL BACKGROUND

Plaintiffs allege that during the Class Period, which runs from October 22, 2009 to the present (the "Class Period"), they and others were employed as hourly, non-managerial workers, including servers, hosts, cooks, expediters, runners, dishwashers, maintenance workers, and bartenders[5] at defendants' Applebee's restaurants. (Pls.' Mem.[6] at 1-2; Notice[7] at 1). According

---

[4]Citations to "Pls.' Reply" refer to Plaintiffs' Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Under Section 216(b) of the FLSA, filed on March 31, 2014.

[5]In seeking certification, plaintiffs include bartenders among the class of affected non-managerial employees who were subjected to the same unlawful wage policies alleged in the Marin and Dove actions. However, neither plaintiffs nor the opt-in plaintiffs have provided declarations attesting to their employment as bartenders at any of the Apple-Metro restaurants, nor have they provided specific information indicating the basis for their allegation that bartenders were treated in the same fashion as the other proposed class members. While defendants have objected overall to certification and specifically to certification of a class that includes employees of restaurants other than the three locations described in the declarations (see discussion infra at 12), they have not raised an objection to the inclusion of bartenders in the class, nor have they submitted any information that suggests that bartenders are paid differently than other hourly, non-managerial employees. Accordingly, the Court Orders the inclusion of bartenders as putative class members.

[6]Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Under Section 216(b) of the FLSA, filed on February 3, 2014.

[7]Citations to "Notice" refer to plaintiffs' Proposed Notice of Collective Action Lawsuit Regarding Wages, attached as Exhibit Y to the Declaration of Ariel Y. Graff in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Under Section 216(b) of the FLSA ("Graff Decl."), filed on February 3, 2014.

to plaintiffs, Apple-Metro, Inc. consists of 36[8] affiliated, jointly operated, managed, and controlled Applebee's restaurants operating in the New York metropolitan area. (Marin Compl. ¶¶ 81-87; Pls.' Mem. at 3-4). Plaintiffs allege that during the Class Period, each of the individual defendants made managerial decisions affecting Applebee's employees. (Marin Compl. ¶¶ 50-57; Dove Compl. ¶¶ 50-59; Pls.' Mem. at 3-4).

In addition to the four named plaintiffs, plaintiffs allege that there were other hourly non-managerial employees working at Applebee's during the Class Period. (Marin Compl. ¶ 6; Dove Compl. ¶ 9). Six of these other employees[9] have already joined the Marin action as opt-in plaintiffs. Plaintiffs allege that all non-managerial employees at all Apple-Metro Applebee's restaurants were subject to the same working conditions and rules, and were all subject to the same unlawful pay policies. (Pls.' Mem. at 16).

I.   Marin Allegations

Plaintiffs allege that defendants engaged in an illegal scheme to alter non-managerial employees' pay, and that as a result, these employees' pay failed to comply with the FLSA and NYLL. (Marin Compl. ¶¶ 99, 101, 120). Apple-Metro uses electronic Point of Service ("POS") terminals with AppleOne software in each of its Applebee's restaurants to place customers'

---

[8]Although plaintiffs' Complaint alleges that there are 35 restaurants in the franchise (see Marin Compl. ¶ 1; Dove Compl. ¶ 1), defendants and plaintiffs both state in their briefing papers that there are 36 restaurants in the franchise. (See Pls.' Reply at 1; Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Conditionally Certify a Collective Action in the Marin Case, dated March 21, 2014 ("Defs.' Marin Mem.") at 1).

[9]Plaintiffs have submitted declarations from DaKeem Griffiths, KaDeem Griffiths, Karrla Usher, Roman Usher, Eleanor Cross, and Michael J. Hazzard.

orders, generate checks, and record employees' hours by requiring employees to clock in and clock out with the system. (Pls.' Mem. at 5). According to plaintiffs, the system can be accessed remotely from defendants' home office, and an employee's hours can be manipulated without the employee's knowledge. (Id. at 5-6). Plaintiffs allege that because Apple-Metro directed its restaurants to reduce the cost of labor to a percentage of the restaurants' gross income, restaurant managers would adjust the non-managerial employees' hours in the AppleOne system such that those employees would not be paid overtime compensation or spread of hours compensation, and they would receive earning statements that did not comply with the NYLL. (Marin Compl. ¶¶ 99-101, 106-10, 114-21). Plaintiffs also allege that they were paid with free movie tickets (id. ¶ 111), and that defendants retaliated against those plaintiffs who complained. (Id. ¶¶ 125, 128, 129, 132-33).

Plaintiffs each worked as hourly, non-managerial employees at Apple-Metro Applebee's locations during the class period. Carlos Marin worked as a broiler cook and dishwasher, and also performed general maintenance work at the Jamaica, Queens location. (Marin Decl.[10] ¶ 3). Kenny Lebron was employed in Manhattan as a server at the 42nd Street location. (Lebron Decl.[11] ¶ 2). Martina Hanisch worked as a server at the Bay Plaza, Bronx location. (Hanisch

---

[10]Citations to "Marin Decl." refer to the Declaration of Carlos Marin, dated November 22, 2013 and attached to the Graff Declaration as Exhibit E.

[11]Citations to "Lebron Decl." refer to the Declaration of Kenny Lebron, dated December 5, 2013 and attached to the Graff Declaration as Exhibit C.

Decl.[12] ¶ 2). Among the opt-in plaintiffs, five worked as servers (D. Griffiths Decl.[13] ¶ 3; K. Griffiths Decl.[14] ¶ 3; K. Usher Decl.[15] ¶ 3; Cross Decl.[16] ¶ 3; Hazzard Decl.[17] ¶ 3); three worked as expediters (D. Griffiths Decl. ¶ 3; K. Griffiths Decl. ¶ 3; K. Usher Decl. ¶ 3); and five were employed as hosts. (D. Griffiths Decl. ¶ 3; K. Griffiths Decl. ¶ 3; K. Usher Decl. ¶ 3; R. Usher Decl.[18] ¶ 3.; Cross Decl. ¶ 3). Opt-in plaintiff Roman Usher states that he was employed as a food runner (R. Usher Decl. ¶ 3); Michael Jason Hazzard states that in addition to working as a server for some period of time, he also worked as a cook (Hazzard Decl. ¶ 3); KaDeem Griffiths also worked in several capacities as server, expediter, host and maintenance worker. (K. Griffiths Decl. ¶ 3). In seeking to certify the class, the named plaintiffs seek to represent all hourly, non-managerial employees, including servers, hosts, bartenders, cooks, expediters, runners, dishwashers, and maintenance workers.

The plaintiffs and opt-in plaintiffs worked at three locations: 42nd Street in New York,

---

[12]Citations to "Hanisch Decl." refer to the Declaration of Martina Hanisch, dated February 3, 2014 and attached to the Graff Declaration as Exhibit D.

[13]Citations to "D. Griffiths Decl." refer to the Declaration of DaKeem Griffiths, dated November 22, 2013 and attached to the Graff Declaration as Exhibit F.

[14]Citations to "K. Griffiths Decl." refer to the Declaration of KaDeem Griffiths, dated November 22, 2013 and attached to the Graff Declaration as Exhibit G.

[15]Citations to "K. Usher Decl." refer to the Declaration of Karrla Usher, dated November 27, 2013 and attached to the Graff Declaration as Exhibit H.

[16]Citations to "Cross Decl." refer to the Declaration of Eleanor Cross, dated November 25, 2013 and attached to the Graff Declaration as Exhibit J.

[17]Citations to "Hazzard Decl." refer to the Declaration of Michael Jason Hazzard, dated April 26, 2013, and attached to the Graff Declaration as Exhibit K.

[18]Citations to "R. Usher Decl." refer to the Declaration of Roman Usher, dated November 27, 2013 and attached to the Graff Declaration as Exhibit I.

Jamaica, Queens, and Bay Plaza in the Bronx. (Defs.' Marin Mem. at 1). Plaintiffs contend, however, that the managers' actions are widespread, and they point out that managers all undergo the same training process which takes place at one of eight training restaurants and that the store-level managers are governed by one set of formal policies. (Marin Compl. ¶¶ 81-87; Pls.' Mem. at 4-5 (citing Seervai Dep.[19] at 24-25); Pls.' Reply at 2 (citing Liss Dep.[20] at 50-51)). Plaintiffs note that in all hourly and overtime wage notices provided to hourly workers posted pursuant to New York State Labor Law, the employer is identified as "Apple-Metro, Inc.," and that non-managerial workers are not employed by individual restaurants, but by Apple-Metro corporate. (Pls.' Mem. at 4).

II.    Dove Allegations

The Dove Complaint alleges that defendants engaged in an illegal tip-sharing scheme that affected tipped employees, including servers, hosts, hostesses, and bartenders,[21] in violation of the FLSA and NYLL. (Dove Compl. ¶¶ 1, 2). Plaintiffs allege that servers were required to pay 3% of their gross tips to the managers, who would distribute this money to the hosts, hostesses, and bartenders. (Id. ¶ 3). Plaintiffs further allege that the tip share would often be below minimum wage, and that when the computer system notified employees of their insufficient

---

[19]Citations to "Seervai Dep." refer to the transcript of the 30(b)(6) deposition of Neesha Seervai, which took place on January 6, 2014 and is attached to the Graff Declaration as Exhibit M.

[20]Citations to "Liss Dep." refer to the transcript of the 30(b)(6) deposition of Randy Liss, which took place on January 6, 2014 and is attached to the Graff Declaration as Exhibit N.

[21]See discussion supra note 5.

wages, the managers would override the system. (Id. ¶ 5). Plaintiffs also allege that the

managers would alter the records of what plaintiffs had received in tips. (Id. ¶ 9). Plaintiffs have

presented direct evidence of this practice from the Jamaica location, as well as evidence of

inaccurate tip shares from other servers in the Jamaica and Bay Plaza locations.[22] (Id.; Pls.'

Mem. at 1). According to her Declaration, plaintiff Dove worked in a number of capacities,

including host, server, and expediter at the Jamaica, Queens location. (Dove Decl.[23] ¶ 3).


## DISCUSSION

### I. Standard for Class Certification Under FLSA 216(b)

Under the FLSA, employers are required to compensate covered employees for all work

performed, including overtime, in order to prevent "labor conditions detrimental to the

maintenance of the minimum standard of living necessary for health, efficiency, and general

well-being of workers." 29 U.S.C. §§ 202(a), 207(a)(1); see also Reich v. New York City Transit

Auth., 45 F.3d 646, 648-49 (2d Cir. 1995) (citations omitted). Pursuant to Section 216(b) of the

FLSA, an employee may bring an action "'to recover unpaid overtime compensation and

liquidated damages from employers who violate the Act's overtime provisions.'" Gjurovich v.

Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003) (quoting Hoffman v.

---

[22]In addition to the Dove Declaration, Dove's claims are supported by the Declaration of Martina Hanisch, who worked as a server at the Bay Plaza location, as well as the Declarations of KaDeem Griffiths, Karrla Usher, Roman Usher, and Eleanor Cross, who worked as servers and hosts at the Jamaica location. Their affidavits are attached as exhibits to the Graff Declaration and each affirms that while working in the Jamaica Apple-Metro location, they received an incorrect tip share.

[23]Citations to "Dove Decl." refer to the Declaration of Shaunta Dove, dated February 3, 2014 and attached to the Graff Declaration as Exhibit L.

Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997)).

Under the statute, an employee may bring a collective action "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). However, unlike a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, a collective action brought under the FLSA may be brought only on behalf of those employees who affirmatively "opt in" by giving consent in writing to become a party to the action. Id.; Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d at 103-04; see also Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007); Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005).

Courts use a two-step analysis to determine whether certification of a collective action under the FLSA is appropriate. See Castro v. Spice Place, Inc., No. 07 CV 4657, 2009 WL 229952, at *2 (S.D.N.Y. Jan. 30, 2009). The first step involves "looking to the pleadings and affidavits to determine whether plaintiffs have satisfied 'the minimal burden of showing that the similarly situated requirement is met.'" Id. (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). To meet this burden, "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. at 261). The standard for approval under Section 216(b) is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23. Avila v. Northport Car Wash, Inc., No. 10 CV 2211, 2011 WL 833642, at *3 (E.D.N.Y. Mar. 10, 2011) (quoting Rodolico v. Unisys

9

Corp., 199 F.R.D. 468, 481 (E.D.N.Y. 2001)). "Although the Second Circuit has yet to prescribe a particular method for determining whether members of a putative class are similarly situated, district courts in this circuit look to the '(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class.'" Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 351 (E.D.N.Y. 2008) (quoting Guzman v. VLM, Inc., No. 07 CV 1126, 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007)).

"The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are 'actually similarly situated.'" Avila v. Northport Car Wash, Inc., 2011 WL 833642, at *2 (quoting Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009)). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." Bifulco v. Mortgage Zone, Inc., 262 F.R.D. at 212.

If plaintiffs meet the "fairly lenient standard" required by the first step in the analysis, the court will typically grant "conditional certification" and authorize notice to potential plaintiffs. See Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. at 367. Although the statute has no specific provision for issuing such notice, the Supreme Court in Hoffman-LaRoche Inc. v. Sperling held that it was appropriate for courts to authorize such notice under the FLSA in order to serve the "broad remedial goal" of the Act. 493 U.S. 165, 171-173 (1989); see also Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 335-36 (2d Cir. 1978) (holding that a district court

"has the power to order that notice be given to other potential members of the plaintiff class under the 'opt-in' provision of the [FLSA]"); Hoffman v. Sbarro, Inc., 982 F. Supp. at 26, n.15. The burden is significantly less than that required to sustain a class certification motion under Rule 23 because the FLSA's opt-in provision merely provides an opportunity for potential plaintiffs to join the action and is only a preliminary determination as to which potential plaintiffs may in fact be similarly situated. See Patton v. Thomson Corp., 364 F. Supp. 2d at 267; Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d at 104. After discovery, the court then looks at the record again to "'make[] a factual finding regarding the similarly situated requirement; if the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified.'" Castro v. Spice Place, Inc., 2009 WL 229952, at *2 (quoting Lee v. ABC Carpet & Home, 236 F.R.D. at 197). Accordingly, the Court's analysis focuses on whether plaintiffs are similarly situated to the putative class members.

## II. Analysis

### A. Marin Action

The Marin plaintiffs move for conditional certification, arguing that they "easily meet" their minimal burden of demonstrating that plaintiffs are "similarly situated" to other potential class members. (Pls.' Mem. at 16). In support of their motion, plaintiffs have submitted the declarations of ten of the named plaintiffs and opt-ins, Marin, Lebron, Hanisch, Dove, DaKeem Griffiths, KaDeem Griffiths, Karrla Usher, Roman Usher, Cross, and Hazzard, each declaring that they worked for one of Apple-Metro's Applebee's restaurants during the Class Period, that

11

their hours were often altered by managers, and that they knew that this practice affected other employees as well. (Id. at 1).

Defendants do not contest plaintiffs' request to conditionally certify the class in the Marin case with respect to the three locations in which plaintiffs and opt-in plaintiffs have worked – 42nd Street, Jamaica, and Bay Plaza. (Defs.' Marin Mem. at 1, 11-12). However, defendants argue that each of their restaurant locations is unique, and the operations are "separate and distinct." (Id. at 3). Accordingly, the Court must determine if the employees of the 33 other Apple-Metro restaurants are actually employed by a "single employer" and not their individual restaurants.

### 1) Single Employer

Courts in this circuit generally consider several factors to determine whether multiple defendants are a single employer for the purposes of the FLSA, including: "'(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control.'" Lamb v. Singh Hospitality Grp., No. 11 CV 6060, 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013) (quoting Perez v. Westchester Foreign Autos, Inc., No. 11 CV 6091, 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013)). The analysis is a fact-intensive inquiry which looks to the totality of the circumstances "'in light of economic reality.'" Perez v. Westchester Foreign Autos, Inc., 2013 WL 749497, at *6-7 (quoting Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 71 (2d Cir. 2006)).

Courts often expand the putative class to locations in which named plaintiffs or opt-in plaintiffs have not worked, provided there is evidence of the above factors. For example, where

there is one owner with the ability to hire and fire employees, affect the quality of employment, determine the method of pay and work schedules, and there is a common payroll system, centralized operations with a single office for human resources and labor management, common gift cards, and common, centralized online advertising, courts have not limited the putative class to employees at the same location as plaintiff. See, e.g., Lamb v. Singh Hospitality Grp., 2013 WL 5502844, at *4 (finding that a restaurant group was a single employer where there was a single owner, central computer payment system, and single human resources manager even though the various restaurant locations employed different managers); Mendoza v. Ashiya Sushi 5, Inc., No. 12 CV 8629, 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013) (grouping those restaurants whose names appeared on the manager's business card, but not expanding beyond the New York City locations because there was no evidence of a centralized corporate structure); Agudelo v. E&D LLC, No. 12 CV 960, 2012 WL 5426420, at *3 (S.D.N.Y. Nov. 5, 2012) (finding that restaurant group constituted single employer where there was central human resource management, same counsel to defend against lawsuits, common online advertising, and common gift card system); Rosario v. Valentine Avenue Discount Stores Co., Inc., 828 F. Supp. 2d 508, 516-17 (E.D.N.Y. 2011) (finding that employees of 27 stores were subject to a "common unlawful policy" where defendant owner had ability to hire and fire, approve pay checks, and employees were commonly transferred between locations).

Here, plaintiffs allege that all Apple-Metro restaurants are commonly controlled by a single owner, Zane Tankel. (Compl. ¶ 50). Plaintiffs further allege that Apple-Metro is a unified operation, acting as an "economic unit directed to the accomplishment of a common business

13

purpose." (Id. ¶ 84). As a result, several aspects of Apple-Metro's restaurants are centralized: among other things, there is a single website which advertises and posts employment opportunities, and the franchise has uniforms and employee benefits that are unique from other Applebee's locations. There is also a centralized management with operations out of a single home office in Harrison, New York. (Id. ¶¶ 13, 86-87; Graff Decl., Ex. W[24]). In addition, plaintiffs allege that all of the managers of the 36 stores are trained at one of eight restaurants. (Seervai Dep. at 24-25). Plaintiffs further allege that all Apple-Metro restaurants utilize the AppleOne POS terminals for their payroll management, which is accessible remotely from the home office. (Pls.' Mem. at 5). Finally, plaintiffs allege that non-managerial workers are employed by Apple-Metro corporate, not by the individual restaurants (Pls.' Mem. at 4), and all wage and hour notices at Apple-Metro restaurants identify Apple-Metro, rather than the "particular (wholly owned) subsidiary associated with each of the . . . restaurants" as the employer. (Id. at 4 (citing Graff Decl.,[25] Ex. P)).

Defendants provide case law in which courts have found that plaintiffs failed to meet their burden in showing that restaurants are a common enterprise. However, the facts of these cases are distinguishable from the present case. For example, in Trinidad v. Pret a Manger (USA) Ltd., plaintiffs had established that only one manager had violated company policy. 926

---

[24]Exhibit W to the Graff Declaration is Eilene Zimmerman, *Franchisee Challenges a Restaurant Chain, to the Benefit of Both*," N.Y. Times, Sept. 14, 2011, an interview with Apple-Metro owner Zane Tankel regarding the restaurant chain and noting Apple-Metro franchise restaurants' departures from common Applebee's protocols.

[25]Exhibit P to the Graff Declaration is a Notice and Acknowledgment Under Section 195.1 of the New York State Labor Law for Tipped Employees, signed by plaintiff Kenny Lebron on August 9, 2011.

F. Supp. 2d 545, 558 (S.D.N.Y. 2013). Furthermore, although the plaintiff in <u>Trinidad</u> wanted to certify all 33 stores in New York, they were owned by a national parent company, and plaintiff was unable to demonstrate that the New York locations operated in a similar fashion that differed from other locations in the United States. <u>Id.</u> Here, plaintiffs have provided evidence that Apple-Metro restaurants operate uniformly within the franchise and differently from other Applebee's restaurants, citing the franchise's centralized operations, and noting that the uniforms, menus, and employment benefits are unique to the Apple-Metro franchise. (Graff Decl., Ex. W; Seervai Dep. at 12, 14-15, 23-25). Although defendants argue that each restaurant has its own general manager and assistant manager, who have "broad authority" to control each location's "separate and distinct" operational needs, they have not directly disputed plaintiffs' allegations of central, common ownership. (Defs.' Marin Mem. at 3).

Similarly, in <u>Lujan v. Cabana Management, Inc.</u>, the court conditionally certified a class of employees in a restaurant's three New York locations, but not the two Florida locations, because plaintiffs provided no evidence that similar violations had actually occurred in Florida. No. 10 CV 755, 2011 WL 317984, at *7-8 (E.D.N.Y. Feb. 1, 2011). The plaintiffs in <u>Lujan</u> failed to provide information about common practices among the locations, and the only suggestion of commonality was a hearsay statement made to plaintiff by an unknown declarant. <u>Id.</u> at *7-8. Here, plaintiffs have provided more evidence of commonality between the locations, including common management and training, centralized computer payroll system, and single home office.

Finally, in <u>Laroque v. Domino's Pizza</u>, also cited by defendants, plaintiffs sought to

certify a class of delivery drivers and customer service representatives based solely on one store in Brooklyn, with scant evidence to tie the other stores to similar violations. 557 F. Supp. 2d at 355-56. Indeed, the Laroque plaintiffs had no evidence that these practices had occurred in *any* other stores. Id. Here, plaintiffs have provided evidence of similar practices in three of Apple-Metro's restaurants.

Based on these combined factors, the Court finds that at this stage of the litigation, there is sufficient indicia of commonality and centralized operations to warrant a finding that Apple-Metro is a single employer.

### 2) Common Policy

However, defendants also argue that plaintiffs have failed to submit evidence that employees of the other thirty-three locations are "similarly situated" to the plaintiffs in this suit, or that there was an unlawful common policy. (Defs.' Marin Mem. at 7-8). They argue instead that if the managers did break from company policy, it was an unsanctioned departure from company policy. (Id. at 12). Defendants cite an Apple-Metro handbook provided to employees, which requires managers to inform new employees that the company prohibits off-the-clock work such as that described by plaintiffs. (Id. at 4). Defendants contend that there are other innocent explanations for why plaintiffs would be missing hours, including that the plaintiffs may have forgotten to clock in at the beginning of the day or clock out at the end of the day, and that a manager may have changed the time sheet accordingly. (Id. at 5). Additionally, defendants claim that they have no company-wide policy against paying overtime, and in fact, they have paid between $98,000 and $266,000 in overtime in each of the last five years. (Id.) Plaintiffs reply

16

that a facially lawful policy may still be practiced illegally. (Pls.' Reply at 3).

Finally, in opposing certification, defendants have submitted declarations from twenty-eight hourly employees who allege that they did not experience the illegal pay practices the Marin plaintiffs experienced. However, defendants "may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits." Colon v. Major Perry Street Corp., No. 12 CV 3788, 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013); see also Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 407, n.6 (S.D.N.Y. 2012) (declining to consider competing declarations from defendants as "courts in this Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process").

The Court does not pass on the merits of these arguments at this time. "[T]he merits of plaintiffs' claim are not at issue on a motion for conditional certification." Laroque v. Domino's Pizza, 557 F. Supp. 2d at 354. After discovery, the class "may be 'de-certified' if the record reveals that they are not [similarly situated] . . . " and defendants are able to establish that the wage violations were actually limited in scope. Agudelo v. E&D LLC, 2012 WL 5426420, at *2 (quoting Myers v. Hertz Corp., 624 F.2d 537, 555 (2d Cir. 2010)) (alteration in original).

Accordingly, the Court finds that plaintiffs have met their minimal burden of showing that non-managerial employees at all 36 Apple-Metro restaurants are similarly situated because they are under common management, common ownership, and have interrelated labor practices. The Court Orders that a collective action consisting of non-managerial employees at Apple-Metro's 36 area restaurants, including servers, hosts, cooks, bartenders, expediters, runners,

17

dishwashers, and maintenance workers, be conditionally certified in the Marin action at this time.

B. Dove Action

Plaintiff Dove alleges that defendants engaged in an illegal tip sharing arrangement, which resulted in the underpayment of wages in violation of the FLSA and NYLL. Plaintiff has submitted her own declaration in support of her claims, and the declarations of plaintiff Martina Hanisch and opt-in plaintiffs KaDeem Griffiths, Karrla Usher, Roman Usher, and Eleanor Cross, who also allege violations similar to Dove's. Plaintiff Dove alleges that the tip sharing occurred at all Apple-Metro Applebee's Restaurants, including the Jamaica location, where she worked as a server. (Dove Compl. ¶ 1). She states that servers were required to pay 3% of their daily tips to their managers, who would distribute the contributions to hosts, hostesses, and bartenders. (Id. ¶ 3). She alleges that the managers often failed to pay the servers minimum wage as a result. (Id. ¶ 96). Furthermore, the distribution of these tips to the hosts, hostesses, and bartenders differed depending on what the managers "felt like on each particular day, often based on their relationship with that employee." (Id. ¶¶ 98-103).

Martina Hanisch, who is a named plaintiff in the Marin case but not in Dove, alleges that she worked as a server at the Bay Plaza Apple-Metro, and that she would see an alert on the AppleOne POS terminals alerting her to the fact that her tips were too low; since she could not clock out with this error message, she would enter a higher tip credit even though she had not received the higher amount, so that she could leave for the day. As a result, Hanisch alleges that her hourly tip-credit pay and her tip earnings were less than the minimum wage. (Hanisch Decl.

18

¶¶ 21, 22; Pls.' Mem. at 9). Opt-in plaintiffs KaDeem Griffiths, Karrla Usher, Roman Usher, and Eleanor Cross, who all worked at the Jamaica location as hosts or servers, also allege that they did not receive the proper minimum wage due to insufficient tip shares. (K. Griffiths Decl. ¶¶ 20-22; K. Usher Decl. ¶¶ 17-18; R. Usher Decl. ¶ 24; Cross Decl. ¶ 18).

Defendants respond that Dove is not similarly situated to other putative class members. They argue that Dove's allegations alone do not show evidence of an illegal deviation from defendants' lawful tip policy, and that plaintiff has presented no other declarations directly alleging an unlawful tip sharing scheme. (Defs.' Dove Mem. at 13). They argue that the Hanisch Declaration and those of the other opt-in plaintiffs do not directly support Dove's claims. (Id.)

The Court does not find defendants' argument persuasive. First, Dove's Declaration would alone be sufficient to conditionally certify the collective action; the FLSA provides that an action may be maintained "by any one or more employees . . . ." 29 U.S.C. § 216. Accordingly, the plain language of the statute allows for one plaintiff to represent the collective action. Indeed, plaintiff's allegations of a "tip-sharing scheme" inherently implicate the involvement of other hourly employees in the restaurants. Moreover, contrary to defendants' assertions, the additional declarations do support Dove's allegations. Hanisch and the opt-in plaintiffs each individually allege that they were underpaid tips in violation of the FLSA. This is enough to satisfy the "modest factual showing" required by plaintiffs at this stage, at which the court must "draw all inferences in favor of the [p]laintiff." Mendoza v. Ashiya Sushi 5, Inc. 2013 WL 5211839, at *4-5. Indeed, plaintiffs have collected declarations from six different employees who state that they received insufficient portions of the tip share; the fact that they do not all

provide the same reasoning for their diminished share is not relevant at this stage. As the Court stated earlier, if, after discovery, plaintiff has not provided sufficient evidence that a violation has occurred, the class may be de-certified at that time.

Defendants next argue that Dove was not a victim of this alleged scheme and has not alleged with specificity the amount she was underpaid or how often she was underpaid, and therefore she is not a proper plaintiff. (Defs.' Dove Mem. at 16-18). Defendants argue that Dove's claim is not viable in light of the Second Circuit's decision in Lundy v. Catholic Health Systems of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)). The Court in Lundy held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Id. Citing Boutros v. JTC Painting and Decorating Corporation, defendants further contend that courts in this circuit have applied the Lundy holding to "dismiss facially inadequate pleadings" at the conditional certification stage. (Defs.' Dove Mem. at 17 (citing Boutros v. JTC Painting and Decorating Corp., No. 12 CV 7576, 2013 WL 3110943, at *3-4 (S.D.N.Y. June 19, 2013))). Plaintiffs respond that the Dove allegations are substantially different than those in Lundy and Boutros, which dealt with unpaid overtime where the plaintiff failed to allege with specificity when the plaintiff had worked more than forty hours per week. (Pl.'s Reply at 9-10).

The Court agrees with plaintiffs. The FLSA allegations in Lundy and Boutros are different in kind to those in Dove in that the claims in Dove relate to tip share violations and not overtime hours worked over forty. See Ayala v. Tito Contractors, No. 13 CV 1603, 2014 WL

20

464786, at *3 (D.D.C. Feb. 6, 2014) (holding that Lundy was not availing where there were not "real questions about whether the plaintiffs had actually worked more than 40 hours in a given week"); Trinidad v. Pret A Manger (USA) Ltd., 926 F. Supp. 2d at 556-57 (granting conditional certification as to three plaintiffs for overtime claims, but dismissing two plaintiffs for failing to allege overtime claims with specificity). Here, even though plaintiff may not have detailed a day by day, week by week analysis of each time the tip share resulted in her receiving less than the minimum, she has sufficiently alleged facts in support of her claim that she was not paid proper wages under the FLSA. Accordingly, the Court does not recommend dismissal of plaintiffs' claims at this time.

Defendants also argue that Dove's contradictory statements undermine her claim, and therefore she cannot represent the class. Defendants cite Dove's deposition, in which she stated that "[m]y tip share was never wrong," contradicting the statements she made in her declaration that, "On many occasions, my share of the tip pool was either incorrect, or given to another employee by mistake by the Restaurant manager there during my shift." (Defs.' Mem. at 11; Dove Dep.[26] at 399; Dove Decl. ¶ 17). Accordingly, defendants argue there is no "common scheme or plan" that violated the law here. (Defs.' Dove Mem. at 14). Plaintiffs respond that Dove's damaging testimony occurred at the end of a long two day deposition, and was preceded by several statements concerning the details of the tip-sharing scheme, and that, in any case, it is not properly considered at this stage. The Court agrees with plaintiffs. It is not the role of the Court to weigh the credibility of the Dove plaintiff at this stage. Here again, "where there are

---

[26]Citations to "Dove Dep." refer to the Deposition of Shaunta Dove, which took place on February 26, 2014 and March 5, 2014.

ambiguities in the papers seeking collective action status," the Court must "draw all inferences in favor of the [p]laintiff." Mendoza v. Ashiya Sushi 5, Inc., 2013 WL 5211839, at *4-5.

Finally, in opposing certification, defendants have submitted declarations from nineteen hourly employees who worked in nine different Apple-Metro restaurants, in which these employees state that they have not been the victims of the alleged tip practices, and therefore are not similarly situated. (Defs.' Dove Mem. at 13). Plaintiffs respond that defendants' competing declarations should not be credited at the conditional certification stage. (Pls.' Reply at 8-9). As discussed supra, competing declarations are not properly considered at this stage, and therefore, the Court disregards them at this time.

Accordingly, the Court Orders that all tipped hourly employees – servers, hosts, hostesses, and bartenders – be conditionally certified as a class in the Dove action.


III. Notice

Plaintiffs have submitted a proposed notice for putative class members and request that the Court approve the notice. (Graff Decl.,[27] Ex. Y). Defendants respond that the Court should allow the parties to confer and submit a jointly acceptable form of notice or permit further briefing on the issue.

The Court Orders the parties to meet and confer on the language in plaintiffs' proposed notice within **one week** of the date of this order. The parties may further brief any disputes as to

---

[27]Exhibit Y to the Graff Declaration is plaintiffs' proposed Notice of Collective Action Lawsuit Regarding Wages.

the language in the notice at that time if necessary.

## IV. Discovery of Putative Class Members' Contact Information

Plaintiffs request that the Court order defendants to produce a computer-readable list of "all hourly non-managerial employees at Apple Metro's Applebee's restaurants at any point in the three years prior or after the filing of the respective operative Complaints" including "names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment" in order to mail the notice to the class members. (Pls.' Mem. at 17-18). Additionally, plaintiffs request that the Court order defendants to post the notice and consent forms in each of Apple Metro's restaurants. (Id. at 18). Defendants respond that plaintiffs are only entitled to the names and last known addresses of potential opt-in plaintiffs, and that the other requested information is personal in nature and accordingly not discoverable. (Defs.' Dove Mem. at 18).

To the extent that information regarding the names and contact information of all hourly non-managerial employees has not been provided by defendants, such information shall be provided to plaintiffs on or before two weeks following the date of this Order. Courts routinely allow plaintiffs discovery into putative class members' "names, addresses, e-mail addresses, and telephone numbers in FLSA actions." Schear v. Food Scope America, Inc., 297 F.R.D. 114, 129-30 (S.D.N.Y. 2014). Accordingly, defendants are Ordered to produce this information. Defendants are further Ordered to produce putative class members' dates of employment. Defendants' only stated objection to plaintiffs' request is a concern for class members' privacy.

23

(Defs.' Dove Mem. at 18; Defs.' Marin Mem. at 12-13). Such protection typically applies to personal information where an interest in privacy is of the utmost importance – for example, social security numbers – and dates of employment are not such private information. Finally, the Court Orders defendants to post copies of the notice in a conspicuous area of each of its restaurants, as "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (citing cases).

## CONCLUSION

Having considered the parties' submissions, the Court grants plaintiffs' request for conditional collective action certification. The parties are Ordered to meet and confer on the proposed notice to be sent to the class and on the notice to be posted in the restaurants, and notify this Court should they have any disagreement. Once a proposed notice for posting has been agreed upon, defendants are Ordered to post the notice in their restaurants and to provide the putative class members' contact information in order to mail the notice.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing ("ECF") system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       July 28 , 2014

                                          /s/ Cheryl L. Pollak
                                          _____
                                          Cheryl L. Pollak
                                          United States Magistrate Judge
                                          Eastern District of New York

                                    24