UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS MARIN, KENNY LEBRON, and MARTINA HANISCH, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> -against-<br><br>APPLE METRO, INC., et al.,<br><br>      Defendants. | Case No. 12 Civ. 5274<br>(ENV)(CLP) |
| SHAUNTA DOVE, on behalf of herself and all others similarly situated,<br><br>      Plaintiffs,<br><br> -against-<br><br>APPLE METRO, INC., et al.,<br><br>      Defendants. | Case No. 13 Civ. 1417<br>(ENV)(CLP) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE THE JULY 27, 2018 AFFIDAVIT OF M. PATRICIA SMITH**

**Date of Service:**

November 9, 2018
New York, New York

**LITTLER MENDELSON, P.C.**
900 Third Avenue
New York, NY 10022
(212) 583-9600

*Attorneys for Defendants*

Defendants Apple-Metro, Inc. *et al.*[1] submit this reply memorandum in further support of their Motion to Strike the eleventh hour July 27, 2018 Affidavit of M. Patricia Smith (*Marin*, Dkt. No. 322-1) ("Smith Affidavit"), which Plaintiffs filed, after oral argument, in purported support of their Supplemental Post-Hearing Brief in Opposition to Defendants' Objections to Judge Pollak's Report and Recommendation ("R&R").

## PRELIMINARY STATEMENT

Clearly realizing that the position taken by the New York State Department of Labor ("NYDOL"), as stated by its General Counsel and Deputy Commissioner, is a death knell to their notice claims, Plaintiffs attempt, at this late date, to introduce an affidavit from former Commissioner Smith purporting to disagree with the NYDOL's position. Plaintiffs are somehow claiming that the Smith Affidavit is not only admissible, but somehow subject to more weight than the current position taken by the NYDOL. With all due respect, and for the many reasons set our here and in Defendants' moving brief, Ms. Smith has no authority or basis to set forth a contrary position to the current NYDOL interpretation, was not even at the NYDOL when the regulations she opined about were passed into law, and should not be allowed to participate in this proceeding at this late date.

Obviously recognizing these inherent problems with the admissibility of the Smith Affidavit, Plaintiffs' brief in opposition uses the opportunity to resort to the same old arguments – i.e., that Defendants somehow misrepresented the law or regulatory history – that have already been made (and disposed of by Defendants) and have no place in connection with the issue at hand, which is the admissibility of the Affidavit. And, as to the admissibility of the Smith Affidavit, a plain reading of the relevant regulatory history, combined with an understanding of

---

[1] Except for individually named defendant Kirk Samlal.

1

the timeline of events and rational application of the Federal Rules of Civil Procedure, unequivocally leads to the conclusion that the Smith Affidavit must be stricken from the record on summary judgment.

## ARGUMENT

I. **WHETHER THE SMITH AFFIDAVIT IS LAY OR WITNESS TESTIMONY IS IRRELEVANT BECAUSE BOTH ULTIMATELY LEAD TO ITS INADMISSIBILITY**

First, Plaintiffs argue that the Smith Affidavit is somehow admissible because it is not discoverable evidence (which would make it clearly inadmissible at this late date); but rather "persuasive authority." (P. Br. at 6, 11-12). This is unavailing. The Smith Affidavit is nothing more than a recently contrived and purportedly factual summary of Ms. Smith's recollections regarding events that occurred around eight years ago. As such, they fall into the category of discoverable evidence. Neither *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559 (2d Cir. 2012), nor *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), cited by Plaintiffs (P. Br. at 7), support a contrary conclusion because they do not address the issue.

Nor is the Smith Affidavit – which concerns old, after-the-fact, purported recollections – part of any legitimate regulatory history, and none of the cases cited by Plaintiffs in this regard are even arguably on point. (P. Br. at 11-12). Those cases support the exact opposite conclusion and describe what is properly considered regulatory history. To be clear, Defendants agree that regulatory history should be considered when interpreting a regulation. What is fairly obvious – at least to Defendants – is that a sworn affidavit, eight years after the fact, at a time when the affiant holds no position with the NYDOL, and opines on something that wasn't even passed during her tenure, should not be considered regulatory history. The Smith Affidavit is obviously not contemporaneous, it is not a part of the formal historical record, it is not publicly available, and it cannot be requested as part of a Freedom of Information request to the NYDOL. It is not

even close to proper regulatory history – instead, it is an advocacy piece, consistent with Ms. Smith's current position as Senior Counsel for NELP.

Second, Plaintiffs argue that Ms. Smith is not a lay witness, but the opposite – "the most qualified, knowledgeable, and accountable individual for the regulatory history at issue here" (P. Br. at 6) – i.e., an expert witness. If that is the case, then the Smith Affidavit should be struck from the record because Plaintiffs did not satisfy the expert disclosure requirements set forth in Federal Rule of Civil Procedure 26(a)(2). Moreover, it is well-settled that expert testimony on the meaning of statutes or regulations is not permissible, as this is the province of the Court. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991) ("As a general rule an expert's testimony on issues of law is inadmissible."); *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988) ("[Expert witness] statements embodying legal conclusions exceed[] the permissible scope of opinion testimony under the Federal Rules of Evidence."), *rev'd in part on reh'g on other grounds*, 856 F.2d 5 (2d Cir. 1988).

In the end, Ms. Smith has no authority to set forth the official position of the NYDOL. In fact, to the contrary, the official position of the NYDOL, as articulated by its General Counsel and Deputy Commissioner, is in direct contravention of the position set forth in her Affidavit. She is doing nothing more than proffering an opinion. As a result, her Affidavit is either lay testimony[2] or some alleged form of expert testimony – Plaintiffs cannot pretend that it is neither. But either way, as stated here and in Defendants' moving brief, it is inadmissible.

## II. PLAINTIFFS' SPURIOUS CLAIMS THAT DEFENDANTS MISREPRESENT THE STATE OF THE LAW IS AN EXERCISE IN DISTRACTION

Next, Plaintiffs divert completely from the subject matter of Defendants' motion – whether the Smith Affidavit is admissible – and spend five whole pages rehashing why

---

[2] If it is lay testimony, then Plaintiffs violated Fed. R. Civ. P. 26(e)(1)(A) by failing to identify her as a potential witness. (*See* D. Br. at 8-9).

3

Defendants' interpretation of the regulatory history is incorrect. (P. Br. at 8-12). This is patently improper and this section should be disregarded in its entirety.

In any event, Plaintiffs' disingenuous accusation that Defendants misrepresented the regulatory history of the applicable regulation (P. Br. at 8-9) is baseless. As stated in previous briefings, there is no written requirement for taking the tip credit under New York law. The regulation that addresses the ability of an employer to take the tip credit is contained in 12 N.Y.C.R.R. § 146-1.3 – not 12 N.Y.C.R.R. § 146-2.2. Section 146-1.3 lays out two requirements, that the employee: (1) receives enough in tips, and (2) be notified of the tip credit. With respect to the latter requirement, Section 146-1.3 then refers the reader to Section 146-2.2 for the type of information to be provided. Indeed, had such a radical change in the law been intended, such that employers would be deprived of the ability to take the tip credit if they failed to provide written notice, surely the applicable regulation – Section 146-1.3 – would have made the "written" notice requirement explicit within the regulation itself.

This interpretation is not just a proffer by the Defendants. It is the very same one propounded by the <u>current</u> NYDOL in the Ben-Amotz and Rogers Opinion Letters. It has also been adopted by the only district court to squarely address this issue since the issuance of those Opinion Letters. *See Carvente-Avila v. Chaya Mushkah Rest.*, 2016 WL 3221141, at *2 (S.D.N.Y. Mar. 1, 2016). Lastly, this interpretation is reinforced by the underlying regulatory history – specifically, then-Commissioner Smith's Opening Statement, the Wage Board's Report and Recommendation, and Commissioner's Order – and the direct reference to conforming the New York requirement to federal law – which has no written requirement. Plaintiffs' spurious and procedurally misplaced argument that Defendants misrepresented anything is an exercise in distraction and desperation – nothing else.

4

### III. THE REGULATORY RECORD INDISPUTABLY SUPPORTS THAT MS. SMITH HAS NO PERSONAL KNOWLEDGE REGARDING THE INTENTION OF THE NYDOL IN PASSING ITS REGULATIONS

Next, Plaintiffs try to rebut Defendants' reliance on then-Commissioner Smith's Opening Statement and subsequent Order by pointing out that her recently drafted Affidavit specifically states that written notice was always contemplated. (P. Br. at 9). Plaintiffs try to give authority to Ms. Smith's <u>new</u> position by claiming that she was the Commissioner when the applicable regulations were adopted. They also claim she has personal knowledge. (P. Br. at 15-17). <u>None of this is true</u>.

In her November 5, 2009 Order, Ms. Smith specifically stated that the NYDOL "will be drafting proposed regulations which will then go through the standard regulatory process." (*Marin*, ECF No. 303-2, at 21). She then left the NYDOL in February 2010. The NYDOL did not issue a proposed rulemaking until October 20, 2010 – eight months later. *See* Hotel and Restaurant Wage Orders, 10/20/10 N.Y. St. Reg. LAB-42-10-00005-P. In that proposed rulemaking, the NYDOL specifically stated:

> ***The Wage Board considered many alternatives and proposals before adopting its recommendations. Several were debated strenuously***. Individual members of the board may not agree with every final Board recommendation. ***Each understood that some compromises were necessary.*** Some decisions involved prioritizing what was most important and balancing of interests. All Board members supported the final Report as a whole.

*Id.* (emphasis added). This is direct evidence that Ms. Smith was not involved in finalizing the current regulations because the "alternatives and proposals" and strenuous debate continued in her absence, under new NYDOL leadership.

Moreover, the September 18, 2009 Wage Board Report and Recommendation referenced a single proposed regulation – 12 NYCRR § 137- 1.2.e – that was to provide employers "with concise guidance on the appropriate notice." (*Marin*, ECF No. 303-2, at 12). The regulations

that were ultimately passed, however, were rewritten to split the tip credit and notice provisions into two separate regulations – 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2 – giving even <u>further</u> support to Defendants' position that the requirements for taking the tip credit exist separately from the written notice requirements of Section 146-2.2.  Again, if the NYDOL meant for written notice to be a requirement to taking the tip credit, it could have easily kept those two regulations together and made written notice explicit.  They did not.  This is exactly the rationale articulated by the current NYDOL and is entirely consistent with the true regulatory history.

Finally, splitting the tip credit and notice provisions into two separate regulations is also consistent with the structure of the New York Labor Law.  NYLL § 652(4) addresses when an employer can take a tip credit.  It has no mention whatsoever of written notice being a prerequisite.  Violation of this statute leads to minimum wage damages.  NYLL § 663.  Since 12 N.Y.C.R.R. §§ 146-1.3 is derived from NYLL § 652(4), minimum wage damages are also the result of a violation of Section 146-1.3.  On the contrary, NYLL § 195(1) addresses what type of wage notice an employer must give to employees upon hire.  Violation of this statute, assuming the affirmative defense for payment of actual wages does not apply, leads to civil penalties of up to $5,000 per employee – not minimum wage damages.  Since 12 N.Y.C.R.R. §§ 146-2.2 is derived from NYLL § 195(1), civil penalties – and not loss of tip credit/minimum wage damages – are the result of a violation of Section 146-2.2 as well.

The legislative history and structure, regulatory history and structure, current New York Department of Labor interpretation, and case law all align with Defendants' interpretation of the tip credit notice requirements.  No written notice is required, and Ms. Smith's lack of current authority, as well as her lack of personal knowledge as to the intent behind the regulations that were ultimately proposed and passed after she left, makes her Affidavit irrelevant and

inadmissible.

### IV. PLAINTIFFS CANNOT REBUT THE FACT THAT THE NYDOL INTENDED ITS TIP CREDIT NOTICE REQUIREMENTS TO MIRROR THE FEDERAL REQUIREMENTS

Plaintiffs also try to rebut Defendants' position by claiming that Ms. Smith's reference to federal law in her Opening Statement and Order was not a reference to the oral notice requirement. This is easily belied, however, by the plain language of Ms. Smith's full question:

> Under federal law, in order to receive a tip allowance, ***employers must inform tipped employees*** that they are getting a lower rate based on receipt of gratuities, and must also keep an accurate record of tips received by employees. Employers who do not do so may not receive a tip allowance. Should the Wage Orders be amended to conform with federal law ***in this respect***?

(*Marin*, ECF No. 302, at 29 (quoting ECF No. 303-2, at 2 (emphasis added))). Again, written notice is not a requirement under federal law. As a result, conformance with federal law, which is the phrase chosen by then-Commissioner Smith, would include oral/actual notice.

Plaintiffs argue further that then-Commissioner Smith could not have intended her regulations' notice requirements to mirror federal law notice requirements because they are so different. (P. Br. at 13-14). Putting aside the fact that Ms. Smith was not involved in the passage of the current regulations, this is a gross overstatement. Section 146-2.2 largely mirrors federal law with respect to the type of information needed to be conveyed in the notice. None of the cases cited by Plaintiffs in support of their argument that the FLSA sets a floor while the New York Labor Law sets a ceiling (P. Br. at 14-15), interpret or involve the regulations at issue here.

Finally, the Regulatory Impact Statement in the October 20, 2010 proposed rulemaking that was issued by the NYDOL specifically addresses where the "proposed rule exceeds federal standards." *See* Hotel and Restaurant Wage Orders, 10/20/10 N.Y. St. Reg. LAB-42-10-00005-P. Nowhere in that section does it state that – unlike federal law that requires actual, instead of written notice, in order to take the tip credit – New York law now mandates that written notice.

7

Simply put, there is no evidence that the NYDOL, months after Ms. Smith left, and while the regulations were still undergoing the notice and rulemaking process, ever intended that written notice was a prerequisite to claiming the tip credit.

## V. PLAINTIFFS CANNOT REBUT THE UNTIMELINESS OF THE SMITH AFFIDAVIT OR THE MOUNTAIN OF EVIDENCE THAT IT IS MORE PREJUDICAL THAN PROBATIVE

As a final attempt to get the Smith Affidavit to pass muster, Plaintiffs claim that it is timely and more probative than prejudicial. (P. Br. at 12-13, 17-19).

First, Plaintiffs argue that the Smith Affidavit is not untimely because "Defendants have repeatedly relied on their misrepresentation of Commissioner Smith's purported position with respect to the tip notice requirement to justify *their* argument," citing to Defendants' Objections to the R&R.  (P. Br. at 12-13).  Aside from their inflammatory and inaccurate accusations concerning Defendants' arguments (which properly rely on the correct regulatory history of the at-issue regulation, and not an eight-year old after-the-fact affidavit), Plaintiffs miss the point.  In fact, this is the precise reason why the Smith Affidavit is untimely.  If Plaintiffs wanted to use an affidavit from Ms. Smith to somehow support their position, they should have used it way back with their summary judgment briefing, not in reaction to Defendants' filed objections to the R&R and only after oral argument before this Court.

Second, Plaintiffs argue that FRE 403 should not be applied because this is an issue for the judge, not a jury.  However, as stated by *BIC Corp. v. Far Eastern Source Corp.*, 23 F. App'x. 36, 38 (2d Cir. 2001), cited by Plaintiffs (P. Br. at 18), "the trial court has broad discretion over the admission of evidence."  And, as explicitly recognized by Fed. R. Civ. P. 56(c)(4), affidavits used in summary judgment briefings must be "made on personal knowledge" and "set out facts that would be admissible in evidence" before a jury.  Accordingly, a FRE 403 inquiry is proper here.

8

As stated in Defendants' moving brief, because of her current status and the fact that she is opining about matters taking place after she left her position, the Smith Affidavit has extremely limited probative value. (D. Br. at 9). On the opposite end of the coin, consideration of the Smith Affidavit would be extremely prejudicial because it is untimely, Defendants have not had the opportunity to depose Ms. Smith or subpoena other NYDOL officials, and because Ms. Smith is biased as the result of her current position in an employee advocacy group. In fact, Plaintiffs do not argue anywhere in their opposition brief that Ms. Smith is not biased, essentially conceding the argument. All in all, it is clear that the Smith Affidavit has no value in this litigation and should be struck from the record.

## CONCLUSION

Accordingly, for all the reasons discussed above and in their moving papers, Defendants respectfully request that the Court grant their Motion to Strike the July 27, 2018 Affidavit of M. Patricia Smith from the record in considering Plaintiffs' Motion for Partial Summary Judgment.

Dated: New York, New York
      November 9, 2018

*s/ Craig R. Benson*
   Craig R. Benson
   Christine L. Hogan
LITTLER MENDELSON, P.C.
  900 Third Avenue
  New York, NY 10022
  Tel: (212) 583.9600

*Attorneys for Defendants APPLE-METRO, INC., AM NYCF, LLC, 42ND APPLE, LLC, 117TH APPLE, LLC, AIRMONT APPLE, LLC, ASTORIA APPLE, LLC, AT APPLE, LLC, BAY PLAZA APPLE, LLC, BAY TERRACE APPLE, LLC, BED-STUY APPLE, LLC, BROADWAY APPLE, LLC, BTM APPLE, LLC, CORTLANDT APPLE, LLC, CROSS COUNTY APPLE, LLC, CROSSROADS APPLE, LLC, EB APPLE, LLC, EXPRESSWAY APPLE, LLC, FLATBUSH APPLE, LLC, FORDHAM*

9

*APPLE, LLC, FRESH MEADOWS APPLE, LLC, HARLEM APPLE, LLC, HAWTHORNE APPLE, LLC, JAMAICA APPLE, LLC, KISCO APPLE, LLC, MAMARONECK APPLE, LLC, NEW DORP APPLE, L.L.C., NEW ROCHELLE APPLE, LLC, OUTERBRIDGE APPLE, LLC, PORT CHESTER APPLE, LLC, QUEENS CENTER APPLE, LLC, REGO PARK APPLE, LLC, RIVERDALE APPLE, LLC, S.I. MALL APPLE, L.L.C., SHEEPSHEAD APPLE, LLC, SVC APPLE, LLC, TRIANGLE APPLE, LLC, WHITE PLAINS APPLE, LLC, ZANE TANKEL, ROY RAEBURN, AUBERY DALEY, ROLAND RAYMOND, DEREK PALMER, SUSY QUINTERO, and CHRISTOPHER ANTOINE*

10