

Advocates for Workplace Fairness

August 4, 2022

**Via ECF and First Class Mail**
The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East, Room 1230
Brooklyn, New York 11201

Re:   *Marin, et al. v. Apple-Metro, Inc., at al.*, No. 12 Civ. 5274 (E.D.N.Y.)
   *Dove, et al. v. Apple-Metro, Inc., at al.*, No. 13 Civ. 1417 (E.D.N.Y.)

Dear Judge Pollak:

We write to supplement Plaintiffs' letter briefing about the parties' dispute over Defendants' pay and timekeeping data. *See* ECF Nos. 355, 357, and 360.[1]

During the June 30 status conference, Plaintiffs' counsel noted that Defendants had failed to substantiate their undue-burden objection by providing a line-item breakdown of the cost to produce timekeeping data. Defendants provided only a lump-sum estimate for their vendor (Rosnet) to run the reports Plaintiffs requested. The lack of detail in this estimate made it difficult to evaluate Defendants' claim of burden and, in Plaintiffs' view, did not amount to the kind of "specific, detailed showing of burden or expense" that would allow the Court to engage in a Rule 26 proportionality analysis of Defendants' objection. *Tello v. A.N.G. Diner Corp.*, No. 17 Civ. 749, 2018 U.S. Dist. LEXIS 65722, *6 (E.D.N.Y Apr. 18, 2018) (Pollak, J.) (citing *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 303-08 (S.D.N.Y. 2012)).

In light of this, the Court ordered the parties to meet and confer. Over a month later, Defendants have still not provided the line-item breakdown of costs Plaintiffs requested.[2]

---

[1]   All ECF references are to the *Marin* docket.
[2]   Defendants' refusal to provide a basis for their objection is sufficient grounds to overrule their objection and compel production. *See* Fed. R. Civ. P. 34(b)(2)(B) (discovery objections must "state *with specificity* the grounds for objecting . . . *including the reasons*") (emphasis added); *Martinez v. City of New York*, No. 16 Civ. 79, 2017 U.S. Dist. LEXIS 205854, *3 (E.D.N.Y. Dec. 14, 2017) (Pollak, J.) (compelling production where defendants failed to substantiate burden).

New York   685 Third Avenue  25th Floor   New York, NY 10017   Tel (212) 245-1000   Fax (646) 509-2060
San Francisco   One California Street  12th Floor   San Francisco, CA 94111   Tel (415) 638-8800   Fax (415) 638-8810
Washington DC   601 Massachusetts Ave NW  Suite 200W   Washington, DC 20001   Tel (202) 847-4400   Fax (202) 847-4410

www.outtengolden.com

August 4, 2022
Page 2 of 5

Nonetheless, even with limited information, Plaintiffs have identified ways to reduce the cost of data production, as discussed below.  Plaintiffs therefore request that the Court order Defendants to produce the requested data.

## Background

Defendants first informed Plaintiffs' counsel on June 9, 2022 that Rosnet estimated it would cost $_____ to produce the requested data.[3]  In response, Plaintiffs requested a line-item breakdown showing the separate components of the work Rosnet proposed to do (e.g., writing the data query, running the report, quality control, and preparing the deliverable) and distinguishing between hourly charges for professional time (and their corresponding hourly rates) vs. machine costs.  Plaintiffs renewed this request following the June 30 status conference and the Court's order to further meet and confer.

Defendants did not provide that information.  Instead, on July 19, they stated generally that the estimate reflected costs, in hours, "to develop, test, and run queries and to validate the output at standard hourly rates."[4]  This is little more than a recitation of the standard steps involved in preparing any data production.[5]  Defendants provided virtually no additional information in a subsequent meet-and-confer session, except to explain that part of the work in Rosnet's proposal was attributable to the fact that the structure of the database has changed over time, and that Rosnet's proposal assumed the need to reconcile different iterations of the database (i.e., creating a single spreadsheet as opposed to simply running the query separately for each iteration).[6]  Plaintiffs proposed various ways to reduce cost, but Defendants rejected these proposals and presented no alternatives of their own.

## Producing Data Need Not be Burdensome.

The data Plaintiffs seek is ordinary pay and timekeeping data kept by Defendants in the regular course of business.  The data is stored in Rosnet, which is a software-as-a-service ("SaaS") vendor that allows restaurants to access and use a web-based database to run their operations.[7]  The purpose of the database is to provide Rosnet's customers – Defendants – the ability to access, search, and use their own data.[8]  The reports Plaintiffs seek are "canned,"

---

[3] *See* Declaration of Dylan Marlborough ("Marlborough Decl.") ¶ 5 & Ex. A.  Defendants have labeled this estimate Confidential under the terms of the parties' stipulated protective order, so the parties have agreed to redact the estimate in this letter and accompanying exhibits.  *See* ECF No. 36 ¶ 11.  Plaintiffs will also mail an unredacted hard copy to the Court.
[4] Marlborough Decl., Ex. A.
[5] *See* Marlborough Decl. ¶ 7.
[6] *Id.* ¶ 7.
[7] *Id.* ¶ 3.
[8] *Id.* ¶ 4; *see also* Comprehensive Restaurant Data Management, https://www.rosnet.com/ (last visited Aug. 1, 2022) ("Rosnet is a multi-unit restaurant management solution that offers unparalleled integration coupled with configurable dashboards allowing you to get your data, how you want it, when you want it.").

August 4, 2022
Page 3 of 5

meaning the queries have already been designed, at least for current versions of the database.[9] Defendants have admitted that the data do not reside on any kind of backup system or storage.[10]

Plaintiffs' Data Scientist has identified three ways in which Rosnet's quote is likely inflated. The exact degree to which these three components inflate the cost estimate could be ascertained through a line-item breakdown of the kind Defendants have refused to provide.[11]

First, because the reports are "canned," there should be no need for Rosnet to write custom code to query the database.[12] The queries should be automated.[13] A computer could execute the query without the need for a Rosnet employee to dedicate substantial time to the search.[14] This "machine time" should be inexpensive. Rosnet presumably has access to modern computing technology that can compile large datasets, because that is part of its business model.[15] To the extent that some coding is needed due to changes in the database, Rosnet should be able to rely on earlier versions of the same "canned" reports or modify existing code.[16]

Second, Rosnet's estimate appears to assume the need to provide a single report, despite historical changes in how the data are organized.[17] That is unnecessary. Based on Defendants' representations, Rosnet has always stored the timekeeping and payroll records Plaintiffs seek, even if the form or structure of the data changed over time.[18] This suggests that the discrepancies between different iterations of the database are likely cosmetic or formatting changes (e.g., a change in the name of a data field).[19] Such changes have little impact on the data's utility. If Rosnet were to simply run a separate query for each iteration of the database (again, using simple query language pre-designed for canned reports), the result would be multiple spreadsheets containing the same data, with slight differences in formatting.[20] There is

---

[9] Marlborough Decl. ¶ 10.
[10] Id. ¶ 11 n.3. Courts generally distinguish between data that is "live" or reasonably searchable, as is the case here, versus data that is "cold" or in backup storage. *See Chen-Oster*, 285 F.R.D. at 301; *Solo v. UPS Co.*, No. 14-12719, 2017 U.S. Dist. LEXIS 3275, *7 (E.D. Mich. Jan. 10, 2017) (backup data stored on tapes inaccessible where production "would take six months, . . . cost at least $120,00, and . . . require the creation of software to make the data useable").
[11] Marlborough Decl. ¶ 6.
[12] Id. ¶ 10.
[13] Id.
[14] Id. ¶ 12. In general, the purpose of a "canned" report is to allow the end user – here, Defendants – to run the report themselves without Rosnet's involvement. The only reason Rosnet needs to be involved is because this query would go back earlier in time than the standard version of the report that is available to the end user. Id. ¶ 10.
[15] Id. ¶ 12.
[16] Id. ¶ 10.
[17] Id. ¶ 8.
[18] Id. ¶ 11.
[19] Id.
[20] Id. ¶¶ 7, 11.

August 4, 2022
Page 4 of 5

no need to create additional work designing a complex query just to produce a single spreadsheet. This would likely save substantial burden and cost.

Third, Rosnet's estimate likely builds in substantial time for data cleaning. Data cleaning is a standard process that identifies and removes inconsistencies a computer may not recognize, such as spotting a date that is formatted incorrectly.[21] Although sometimes time-consuming, this cleanup is part of the daily work of any data analyst or data scientist.[22] It should not independently overwhelm the other cost components of production, because "the standard for the production of ESI is not perfection." *Chen-Oster*, 285 F.R.D. at 306. Defendants must only take "reasonable" measures to validate the ESI from Rosnet's databases to ensure completeness and accuracy. *See id.* (burden is exaggerated where it "appears to be based on a goal of providing a pristine set of data"). Plaintiffs offered to alleviate Defendants' burden by having Rosnet produce the data without data cleaning, leaving Plaintiffs' Data Scientist to do the cleanup work. Defendants rejected this offer.

In sum, as one often finds when negotiating a price with a contractor, it would be a mistake to accept Rosnet's high quote at face value. Much of the work may be unnecessary, and the technological lift is not unduly burdensome. Plaintiffs can eliminate Defendants' reliance on Rosnet for many of the components that are likely driving the costs of production.[23] Plaintiffs are capable of independently handling data reconciliation and cleaning steps. A "raw" data production of this kind would significantly reduce estimated costs while satisfying Defendants' discovery obligations.[24]

The fact that Defendants rejected Plaintiffs' cost-saving proposals is telling. There is little reason for a producing party to undertake *more* costly steps than a requesting party has asked for, unless the goal is to create an inflated number in the hope that the Court will cut off the requesting party's access to the evidence. That is contrary to the purpose of the meet-and-confer process, and amounts to gamesmanship.

The result Defendants seek is also contrary to the proportionality principles of Rule 26. In a wage theft case like this one, it is hard to imagine a form of evidence that is more "important[t] . . . in resolving the issues" in the case than contemporaneous business records of time worked and wages paid. Fed. R. Civ. P. 26(b)(1). Even if the cost of data production remains significant after cost-saving measures have been adopted, that burden is outweighed by the likely benefit of the data Plaintiffs seek. *Id.* And Defendants' relative access to this information and the resources to obtain it at lower cost than Rosnet's initial estimate further weigh in favor of compelling production.

---

[21]   *Id.* ¶ 13.
[22]   *Id.* ¶ 13.
[23]   Plaintiffs also offered to accept data limited to the approximately 1,000 opt-in plaintiffs (for class certification purposes only). Defendants declined this offer because Rosnet informed them that it would be *more expensive* to run a limited query than a complete one.
[24]   Marlborough Decl. ¶ 15.

      For these reasons, Plaintiffs respectfully request that the Court order Defendants to produce the requested data, incorporating whatever aspects of Plaintiffs' proposed cost-saving measures are feasible.

                                      Respectfully Submitted,

                                      Michael J. Scimone

C:      All Counsel of Record (via ECF and email)